### McDERMOTT *v.* UNITED STATES.

#### *(Circuit Court, D. Kentucky.* October 21, 1889.)

1. UNITED STATES COMMISSIONERS—FEES.
    Rev. St. U. S. § 847, prescribes the fees payable to commissioners for certain services, among others, "for administering an oath ten cents," "and for any other service the same compensation as is allowed to clerks for like services:" Section 828 allows clerks "for entering any return, * * * or drawing any bond, or making any record, certificate, return, or report, for each folio, fifteen cents." Section 1758 provides that oaths of office may be taken before any officer authorized to administer oaths by United States laws; and section 1778 authorizes circuit court commissioners to administer oaths. Supervisors of election appointed by virtue of section 2012 are sworn officers, whose oaths are required to be preserved and filed by section 2026. *Held,* that a commissioner is entitled, for drawing oaths of supervisors of election, to 15 cents per folio; for administering same, 10 cents each; and for attaching his jurat, 15 cents each.

2. SAME.
    He is entitled to the same compensation from the government for drafting affidavits of the supervisors that they had actually performed the services, administering an oath to each, and attaching his jurat, where he is instructed by the attorney general that such affidavits are required before the supervisors will be paid for their services.

3. SAME.
    Rev. St. U. S. § 1014, provides for the mode of criminal procedure, "at the expense of the United States," against offenders against the United States, taken before commissioners for preliminary examination. Arrests for such offense can be made by virtue of a warrant issued on a sworn complaint only. *Held,* that under §§ 828, 847, a commissioner was entitled, from the government, to 15 cents per folio for drawing complaints in criminal cases for violating election laws, heard before him, and to 15 cents each for entering returns of such warrants and subpoenas for witnesses for the government in such cases.

4. SAME.
    Rev. St. U. S. § 828, gives clerks for making dockets and indexes, on the trial of a cause where issue is joined, $3, and in a cause which is dismissed, $1. Act Cong.

Aug. 4, 1886, (24 St. p. 256, c. 903,) which is a deficiency appropriation bill, contains no provisions other than appropriations to pay deficiencies, but, in the appropriation for fees of commissioners, provides that they shall not be entitled to any docket fees. It contains no repealing clause, and does not refer to sections 828, 847. *Held*, that it does not repeal them, but the proviso refers simply to the money appropriated by the act, and that a commissioner is still entitled to the docket fees provided by section 828.

**5. SUPERVISORS OF ELECTIONS—FEES.**

Rev. St. U. S. § 2031, provides that supervisors of election shall be paid, for services as such, certain compensation apart from and in excess of all fees allowed by law for performance of duties as circuit court commissioners. The chief supervisor of elections is required by statute to prepare and furnish the supervisors all necessary instructions. *Held*, that a chief supervisor of elections is entitled to fees for such instructions from the government, where it is conceded that the amount charged is correct.

**6. SAME.**

He is also entitled to 15 cents per folio for special instructions to each of certain supervisors concerning particular subjects, and particular names of voters on the registration lists, or denied registration, as each instruction is an original, and to 10 cents each for filing returns of same.

**7. SAME.**

But he cannot recover fees for notifying the supervisors of their appointment, as there is no statute providing therefor.

**8. SAME.**

Under Rev. St. U. S. § 2031, allowing the chief supervisor of elections 15 cents per folio for copies of any paper on file, he is entitled to that fee for copies of the oaths of office of supervisors, which are in his custody by virtue of section 2026, furnished by the United States marshal on requisition of the attorney general, and to 15 cents each for his certificate thereto.

**9. SAME.**

He is also entitled to 15 cents for each certificate to be attached to each deputy-marshal's and supervisor's account, furnished under instructions from the attorney general.

**10. SAME.**

He is entitled to 10 cents each for administering the oath required by section 2026 to voters whose right to vote is doubted, and to 15 cents for each jurat attached to such oaths.

**11. SAME.**

There is no statute allowing him mileage for attending the federal court in the performance of his official duties, and he is not entitled thereto.

**12. SAME.**

He is not entitled to a *per diem* fee for attending the federal courts in the performance of his duties, as there is no statute allowing such fee; the allowance of a *per diem* fee to supervisors by section 2031 not including the chief supervisor.

At Law. Action for official fees.

*George Du Relle* and *H. G. Phillips*, for plaintiff.

*J. C. Wickliffe*, U. S. Atty.

JACKSON, J. This suit is brought by the plaintiff to recover fees claimed by him for services rendered as circuit court commissioner and chief supervisor of elections. The provisions prescribed by the act of congress, approved March 3, 1887, giving this court jurisdiction in such cases, seem to have been strictly complied with in the bringing of the suit, viz., an account exceeding $1,000 in amount, succinctly stated in plaintiff's petition, with the nature of the claim duly set forth, and the proof that a copy of the petition has been served upon the district attorney, and another copy mailed by registered letter to the attorney general. The district attorney has appeared, filed a general demurrer to the petition, together with his statement to the court that he "can file

no objections" to the items claimed by the plaintiff. Record evidence is on file in the case showing petitioner's appointment as commissioner and chief supervisor; and it is shown that the items claimed were embraced in plaintiff's account against the United States, which was duly approved by the court in the usual way, and as prescribed by the act of congress approved February 22, 1875, (Supp. Rev. St. U. S. 145, 146,) and forwarded to the treasury department at Washington, where they were audited, and the items here claimed were disallowed to plaintiff, by the first comptroller. The plaintiff has given his deposition showing that he actually performed the services, the fees for which are sued for here; and to the same effect is the affidavit of James T. Ford, who was in plaintiff's law-office in Louisville during the rendering of these services, and which affidavit is by agreement to be treated as a deposition. The petition itself is duly sworn to, and the case is submitted to the court upon the written arguments of plaintiff's counsel.

The record in this proceeding abundantly shows that the services sued for were actually rendered, in good faith, and with an honest endeavor to faithfully perform the duties required by law of the plaintiff in his character of commissioner and chief supervisor; and this is admitted by the government, in terms by the district attorney, and by the demurrer, which raises for the decision of the court the question whether the fees charged for such services are authorized by law. For convenience, the fees claimed by the plaintiff for work done by him as commissioner will be considered separately from those claimed for services rendered as chief supervisor of elections.

1. Section 828 of the Revised Statutes contains the tariff of fees chargeable by clerks of the federal courts, and is as originally enacted February 26, 1853, having remained unchanged since then; while section 847, Id., also a part of the same act of congress, prescribes the fees payable to commissioners for certain services, "and for any other service the same compensation as is allowed to clerks for like services."

(*a*) The supervisors of election appointed and commissioned by the court, by virtue of section 2012, Rev. St., upon the recommendation of the chief supervisor, (Id. § 2026,) are sworn officers, whose oaths the chief supervisor must "preserve and file," as required by the latter section. Plaintiff charges for drawing these oaths of office 15 cents per folio; administering the oath to each supervisor, 10 cents; and for his jurat or official certificate in writing that each oath was administered, 15 cents in each instance,—these fees aggregating the sum of $147.60. Commissioners are allowed "for administering an oath, ten cents," (Id. § 847;) and clerks of the federal courts, "for entering any return," etc., "or drawing any bond, or making any record, certificate, return, or report, for each folio, fifteen cents."[1] Oaths of office "may be taken before any officer who is authorized, either by the laws of the United States or by the local municipal law, to administer oaths in the state, territory, or district where such oath may be administered." Rev. St. § 1758.

---

[1] Rev. St. § 828.

*Vide*, also, section 1778, Rev. St.[1] These oaths were therefore required by law to be taken and filed, and they thereupon became a part of the records in the office of the chief supervisor. The sections of the statutes above quoted and referred to prescribe the rate of fees for taking them as claimed by the plaintiff, and no good reason appears why the defendant should not pay the same. Exactly similar items were allowed in *Re Conrad*, 15 Fed. Rep. 641, and in *Gayer* v. *U. S.*, 33 Fed. Rep. 625. It will be noticed that the charge is for drafting the official oath, swearing the officer to the same, and attaching the plaintiff's certificate or jurat thereto. The fee of 10 cents is given by the statute for "administering" the corporal oath, as in case of a witness to testify; and the additional fee of 15 cents for the jurat is allowable where the person taking the oath subscribes to the paper, as a deposition, affidavit, and the like, and the officer annexes his jurat as the record evidence appearing on the instrument itself that such oath was administered.

(*b*) The next claims in the plaintiff's petition to be considered are precisely similar to the foregoing, viz., drafting affidavits of the supervisors showing by their several oaths that they had actually performed the services for which compensation was claimed by them, respectively, administering an oath to each, with the officer's jurat or certificate of the same. They amount to the sum of $100. Supervisors of election are paid by the marshal, and receipt to him on pay-rolls furnished by the government for that purpose. Here the attorney general, by a communication to the marshal, before the supervisors were paid, advised him that "affidavits of supervisors of election should be affixed to the pay-rolls as vouchers when forwarded to the treasury for settlement." This instruction of the attorney general was by letter furnished to the plaintiff; and the work was for this reason, and upon such request and instruction, done by the plaintiff as charged for. There can be no reason why the government should not pay the fees.

(*c*) In certain criminal cases heard before the plaintiff as commissioner, for violation of the election laws by the various defendants therein, he claims fees at 15 cents per folio for drawing the complaints or affidavits on which the warrants were issued, amounting to $3.30, and for entering returns of the warrants and subpœnas for witnesses for the government in the cases, at 15 cents each, in the sum of $3; or, in all, $6.30. It would be difficult to conjecture any legal reason for the disallowance of these small fees at the treasury department. Section 1014 of the Revised Statutes provides the mode of criminal procedure, "at the expense of the United States," where offenders are arrested "for any crime or offense against the United States," and taken before "commissioners" or other proper officers for preliminary trial and examination. Such arrests can be made only by virtue of a warrant issued upon a complaint under oath. The fee of 15 cents a folio, as shown above, is prescribed by sections 828, 847, Rev. St. The fee "for entering any returns" is also fixed by statute,—"for each folio, fifteen

---

[1] This section authorizes circuit court commissioners to administer oaths in all cases in which, under laws of the United States, justices of the peace are so authorized.

cents." Id. § 828. In the register of the department of justice, "compiled by the authority of the attorney general," and issued by the attorneys general successively for now nearly 20 years, is a "form of commissioners' account of fees" in cases where preliminary examinations are had, among other instructions to those officers from the department of justice; and this form has been continued without change through all the publications. Among the items are those "for" drawing complaints and "entering returns" of "warrant" and "subpœna" at the same rate per folio as is charged by the plaintiff here. These fees have also been allowed in the following cases: *Barber* v. *U. S.*, 35 Fed. Rep. 886, and *Rand* v. *U. S.*, 36 Fed. Rep. 671. And, the charges being correct, the plaintiff should be allowed them here.

(*d*) The plaintiff claims docket fees in the cases heard before him preliminarily as commissioner, to-wit, $1 in the single case dismissed, and $3 each in the cases in which there were actual hearings; in all, $31. Section 828, Rev. St., gives clerks "for making dockets and indexes, taxing costs, and all other services [than those otherwise enumerated in the section] on the trial or argument of a cause where issue is joined and testimony given, three dollars," and, "in a cause which is dismissed or discontinued, one dollar." In *U. S.* v. *Wallace*, 116 U. S. 398, 6 Sup. Ct. Rep. 408, the supreme court, affirming the judgment of the court of claims in the case, held that commissioners were entitled to the same fees as clerks for making dockets and indexes, etc.; Justice MATTHEWS delivering the opinion. And the judgment of the court is based on section 847, Rev. St., giving commissioners the same compensation as clerks for like services. The decision was made in 1885, and in that case the commissioner was required by an order of the court to keep a docket containing certain entries, as is the case with commissioners at Louisville. Later, in 1887, following the case of *U. S.* v. *Wallace, supra*, Judge BUTLER, of Pennsylvania, in *Phillips* v. *U. S.*, 33 Fed. Rep. 164, held that an order of court was not necessary; that "the duty of keeping a docket seems to be a plain implication from the authority conferred to issue process and hear cases;" and that "a commissioner could not properly discharge his functions without keeping a record of his proceedings." And to the same effect is *Knox* v. *U. S.*, 23 Ct. Cl. 370. The right of commissioners to be paid docket fees, as they are popularly called, seems thus to have been finally settled in their favor, and no doubt or question could now be properly entertained concerning it, were it not for a proviso contained in the deficiency appropriation bill, passed August 4, 1886, (chapter 903, 24 St. 256.) It is as follows:

"Be it enacted," etc., "that the following sums be, and the same are hereby, appropriated out of any money in the treasury not otherwise appropriated to supply deficiencies in the appropriations for the fiscal year 1886, and for other objects hereinafter stated, namely: * * * Judicial * * * fees of commissioners: For fees of commissioners, and justices of the peace acting as commissioners, fifty thousand dollars: provided, that for issuing any warrant or writ, and for any other necessary service, commissioners may be paid the same compensation as is allowed to clerks for like services; but they shall not be entitled to any docket fees."

Several of the courts have considered this statute. The first case was decided by Judge BRUCE, of the middle district of Alabama, in November, 1887, being *Bell* v. *U. S.*, 35 Fed. Rep. 889, in which the plaintiff, a commissioner, was held to be entitled to these docket fees, notwithstanding the provisions of the statute above quoted; and judgment was rendered in the district court in his favor. From this decision an appeal was taken to the circuit court by the United States, and the appeal was dismissed upon argument in July, 1888. The next case in point of time is *Strong* v. *U. S.*, 34 Fed. Rep. 17, decided in the district court for the southern district of Alabama, in February, 1888, by Judge TOUL-MIN, pending the appeal of the former case in the circuit court; and the right of commissioners to docket fees is denied under the proviso in the act of August 4, 1886, above quoted. In *Rand* v. *U. S.*, 36 Fed. Rep. 671, decided by Judge WEBB in the district of Maine in October, 1888, this statute is fully examined and construed, and the decision reached that the proviso does not take away the right of commissioners to receive docket fees, but only excepts their payment out of the sums appropriated by the act of congress containing the proviso. And to the same effect are *Rand* v. *U. S.*, 38 Fed. Rep. 665, decided by the same court as the case last cited, and *Hoyne* v. *U. S.*, 38 Fed. Rep. 543, in which a similar judgment was rendered by Judge BLODGETT at Chicago; both the cases last cited having been determined in April, 1889. These are the only decisions reported on this question. The act of August 4, 1886, does not refer to sections 828 and 847, Rev. St., nor in terms repeal them; nor does it contain the usual provision that all acts and parts of acts not consistent with it are repealed. If section 847 is not repealed as to commissioners' docket fees, the plaintiff here is of course entitled to recover them. If repealed, it can only be by implication; and courts look with small favor to the construction of a statute which would necessarily repeal another, unless the intention of the legislative body is manifest, and the language clear. The title of this act is "An act making appropriations to supply deficiencies in the appropriations for the fiscal year 1886, and for prior years, and for other purposes;" while the enacting clause recites an appropriation of money for the deficiencies of that year, "and for other objects." This act, embracing some 53 pages of the statute book, contains but four other provisos besides the one pertaining to commissioners' fees, viz.: One providing that no part of the sum appropriated to pay certain judgments shall be available till the right of appeal has expired; another, appropriating certain moneys for a reservoir, provides that a board of engineers shall make a full report of the work, etc.; another, appropriating certain moneys for postmasters' salaries, with a proviso that they shall be adjusted in the method pointed out; and still another, where a sum was appropriated for the expense of a board of visitors to the Naval Academy, with a proviso "that no part of this sum, or of any other appropriation by congress for expenses of the board of visitors, shall be used to pay for intoxicating liquors;" and this is the only provision containing new general legislation in the entire act, and its terms are clear and plain that the pro-

vision is not intended to have a wider scope than the expenditure of the money appropriated by this portion of the bill. As a matter of fact, though it is not proven in this record, the comptroller, disallowing these fees, has allowed them to commissioners in this circuit without question since the passage of the act of August, 1886; thus construing the proviso as operating only to prevent the use of the money thereby appropriated to the payment of such docket fees earned during the fiscal year of 1886 and prior years. The act in question was simply a deficiency appropriation bill. Its function was only to appropriate money to pay sums already due from the government. It contains no single provision other than an appropriation of public money for this purpose; and that this proviso was intended to repeal a general law on the subject of fees of over 30 years' standing, without any reference to it, and without any clause repealing it in terms, and without any general repealing clause, will not be imputed to congress, and the court ought not to so presume. These fees should therefore be allowed to the plaintiff.

2. The fees of chief supervisors of election are prescribed by section 2031 of the Revised Statutes, which provides that they shall be allowed and paid, for services as such, certain "compensation apart from and in excess of all fees allowed by law for the performance of any duty as circuit court commissioner." Their duties are mainly prescribed by sections 2020, 2026, Rev. St.

(*a*) The plaintiff here, as chief supervisor, prepared and furnished instructions to the supervisors concerning their duties at the registration of voters at Louisville, for which he claims $322.50, and like instructions for their guidance at the election in that city for member of congress, his charge for which is $427.05, together with instructions for the election supervisors in other towns (of less than 20,000 inhabitants) where there was no registration, claiming therefor $161.70; in all $911.25. The statute requires the chief supervisor to prepare and furnish the supervisors with all necessary "instructions" for their "direction" in the discharge of their duties; and an examination of the various provisions of the law on this subject will show that their functions are different in the large cities of over 20,000 population, from what they are in smaller cities and in the country; hence these different sets of instructions for which plaintiff claims compensation at 15 cents per folio,— some being 10, others 11, and the rest 13 folios in length. There are two reported cases as to these fees for instructions by chief supervisors: *In re Conrad*, 15 Fed. Rep. 641, and *Gayer* v. *U. S.*, 33 Fed. Rep. 625; the former decided in 1883, and the latter in 1888. In the *Conrad Case*, the chief supervisor was held entitled to be paid for such instructions 15 cents per folio; while in the *Gayer Case* he seems to have been allowed that fee for preparing the instructions, and a fee of 10 cents a folio for the copies of them sent to the supervisors. Since this case was submitted to the court, plaintiff has furnished an additional brief, showing recent rulings by the accounting officers of the treasury, made with the approval of the attorney general, under which such instructions are paid for at the rate claimed here; and there has been filed the original

report from the first comptroller's office, dated June 8, 1889, allowing to the chief supervisor in Indiana, on a rehearing of the disallowances in his account, the fees for similar instructions at 15 cents a folio; and other supervisors in this judicial circuit have since been paid similar fees, as I am informed. These instructions seem to have been issued to the supervisors generally; but the proof shows that upon notice they appeared before the chief supervisor in person, and were orally instructed as to their duties, in addition to each receiving one of the printed instructions, and it is not conceived that under such circumstances the officer's fees would be different from what they would where original instructions were issued to each supervisor, and addressed to him over the signature of the chief supervisor, though the latter is certainly the safer and better course. And while, of course, the construction given by the accounting officers to a statute is not binding upon the courts, it would seem to be a hardship to adjudicate the question against the petitioner, where there is really no contest between the parties over it, and where it is conceded that the amount charged is correct. It is accordingly allowed.

(b) As to the special instructions issued respectively to 23 supervisors at one time, and to 22 at another, concerning particular subjects and particular names of voters,—on the one hand appearing on the registration lists, and on the other hand denied registration,—there can be no doubt that each was an original, and should be paid for at 15 cents per folio, the fees for which amount, respectively, to $14.75 and $7.70; and the same are allowed, together with the fee of 10 cents for filing returns of same, $4.50.

(c) The petitioner charges 15 cents each for notices sent by him as chief supervisor to the various supervisors by mail; the fees amounting in all to $79.35. The court appointed these supervisors upon information furnished to it by the chief supervisor, (section 2026, Rev. St.;) and it was his duty to receive, preserve, and file their oaths as such, to properly instruct them as to their duties, and to receive from them "all certificates, returns, reports, and records of every kind and nature," under the provisions of the act authorizing their appointment. The statute does not provide how these officers shall be notified of their appointment, nor, in terms, whose duty it is to so notify them; but the chief supervisor is in a sense their immediate superior, and such notification by him is eminently proper, and there should be some provisions made to pay for the service, but the courts cannot make a statute, or supply its omissions by strained constructions. It seems that no statute has taken notice of such items of official service by the chief supervisors, and provided a fee for them.

(d) In the correspondence between the attorney general and the chief supervisor and marshal at Louisville (a copy of which is filed in this record) concerning the payment by the latter of the election supervisors and deputy-marshals, the petitioner was required to furnish the marshal with copies of all their oaths of office, for which he claims here $135.90. The oaths were on file in his office, and he was their proper custodian.

Rev. St. § 2026. For a copy of any paper on file, the statute allows him 15 cents a folio. Id. § 2031. It was his duty to make and furnish these copies, and the statute fee therefor is certainly chargeable to the government. The petitioner has computed the copies at 15 cents a folio for the copy, and 15 cents for his certificate thereto; which makes this claim $135.90 for the copies, and $67.95 for the certificates thereto, for which he is entitled to judgment.

(*e*) In addition to these copies of their oaths, the chief supervisor was required to furnish his own official certificate, to be attached by the marshal to each deputy-marshal's and supervisor's account, showing the number of days each performed service as such officer. The instructions contained in the correspondence above referred to, as well as the correspondence between the petitioner and the district attorney, show this beyond any question; and the fee of 15 cents for each such certificate is charged in accordance with the statute, and amounts to $67.95 in all.

(*f*) Petitioner was obliged to attend the United States court at Covington in the performance of his official duties as chief supervisor, and and he charges mileage at 10 cents a mile one way for 110 miles. The statute gives neither commissioners nor chief supervisors mileage in any case whatever; nor can the court. It was doubtless the petitioner's duty to attend the court as he did; and, as it will not be presumed that the law requires duties and expenses from an officer without compensation, perhaps petitioner's expenses on this trip to Covington might be recoverable, were they sued for; but the claim for mileage must be disallowed.

(*g*) Section 2026, Rev. St., prescribes, among other duties of the chief supervisor, that he shall cause the names of those who may register and vote, or either, "whose right to register or vote is honestly doubted, to be verified by proper inquiry and examination," etc.; and, in pursuance of this authority, petitioner administered an oath to each of 23 voters who were refused the right to register, and he charges 10 cents each for same, and 15 cents for the certificate or jurat to such oath. As these are the fees prescribed by law, plaintiff should be allowed this compensation for his services in this behalf, in the sum of $5.75, as claimed.

(*h*) The remaining item of $125 is for a *per diem* fee of $5 a day for attendance on the circuit courts of Kentucky, 25 days, in the discharge of his duties as chief supervisor. Section 2011, Rev. St., provides that "within not less than ten days prior to the registration," or election, if there be no registration, the court shall be open for the transaction of the business contemplated by the statutes, (title 26,) and "shall proceed to appoint and commission, from day to day, and from time to time," the election supervisors, (Rev. St. § 2012.) The chief supervisor is required to receive all applications for the appointment of supervisors; and, "upon the opening  *  *  *  of the circuit court for the judicial circuit in which the commissioner so designated [as chief supervisor] acts, he shall present such applications to the judge thereof, and furnish information to him in respect to the appointment by the court of such su-

pervisors of election," (section 2026, Rev. St.;) and "there shall be allowed and paid to each supervisor of election * * * who is appointed and performs his duty, under the preceding provisions, compensation at the rate of five dollars per day for each day he is actually on duty, not exceeding ten days," (section 2031, Id.) The case *In re Conrad*, 15 Fed. Rep. 641, holds that the chief supervisor, under this legislation, is entitled to the *per diem* fee, but limits the amount to 10 days' attendance. In *Gayer* v. *U. S.*, 33 Fed. Rep. 625, the chief supervisor was allowed this *per diem* fee for 26 days; the court placing his recovery on the ground that "he would be entitled as commissioner, when engaged in his official duties, for services analogous to these," to be so paid. In the *Conrad Case* the court construes the words "supervisor of election" to embrace the chief supervisor; in the *Gayer Case* he is held not to be embraced within them; the two cases thus proceeding to judgment on widely different grounds. There is no similarity whatever between the duties to be performed by the supervisor and the chief supervisor; and by the statute (Rev. St. § 2031) the former is paid only by a *per diem* fee, while the latter is paid according to the tariff of fees prescribed in that section. There is no *per diem* fee whatever provided by section 847, Rev. St., for attendance upon the circuit or district court, but only for time employed in the preliminary examination of defendants charged with criminal offenses, which certainly bears no analogy to the duties required of the chief supervisor by title 26 of the statutes. Nor can his services performed simply as chief supervisor be paid for by the fees provided for commissioners for entirely different duties, although the same person holds both offices. There being therefore no provision in the law authorizing the payment of *per diem* fees to a chief supervisor of elections, petitioner cannot be allowed them, and judgment must be refused as to this item.

It follows, from the foregoing conclusions, that the plaintiff is entitled to recover of the United States the amount of the several sums herein allowed him as proper charges for the services rendered by him, both as United States commissioner and as general supervisor of elections; and judgment is accordingly awarded him against the defendant for the aggregate amount of said allowances.